Next take 21-315 Wells Fargo Bank v. Stewart Title Guaranty Company May it please the court, this case presents, at least based on the issues I've heard argued this morning, an incredibly simple question for the court. It turns on a plain language reading of a title insurance policy, and not just a title insurance policy, a standard form 1992 ALTA loan policy. That may not mean anything to you, but in the world of title insurance, to put it in terms that you might understand, it's the Boeing 737 of title insurance policies. If you go to an airport, that's 90% of the planes you see are Boeing 737s. The 1992 ALTA loan policy was the policy in effect during the Great Recession. It wasn't replaced until 2006. You don't see a lot of title claims made on loan policies. When the economy is good, loans are performing. It's when the economy goes bad, it's when there's a default that you actually see claims made under loan policies. The 1992 policy was the policy that was litigated by lenders such as Wells Fargo all over the country during the Great Recession. There is no allegation in this case by Wells Fargo that that policy is somehow ambiguous. That makes sense because there's a developed body of case law that makes it clear that it's not. Condition 783 in that policy clearly sets forth the indemnification obligation of the insurance company. The language is mandatory, provides that the insurer will pay the lesser of three amounts. In this case, we actually had a stipulation by the parties prior to trial that identified specifically which of the three would be used. We went to trial on that basis. The parties essentially stipulated that this was going to be a DIV trial, a trial where the parties were going to argue about the diminution in value that had been suffered as a result of the loss of the claim property. We show up to the trial. Wells Fargo does not bring a DIV appraisal. Instead, they bring an appraiser who wants to testify as to the highest and best use of the claim property, ignoring the collateral estate. Stuart Tyler presents a DIV appraisal. Admittedly, it was a unique DIV appraisal. The reason it was unique was because this was an unusual policy. It covered thousands and thousands and thousands of acres. This was a $100 million policy, and it covered acreage, which was in three different counties in Utah, comprising a lot of mining claims. It had everything from golf courses to residential properties. You had parcels that were nowhere near each other in proximity, and the claim property happened to be even more unique than that. It was 127 acres. It was spread out over two and a half miles at the top of a mountain range. The rain went between 8,000 and 10,000 feet in elevation and averaged only a few hundred feet in width, not yards. We're not talking about football fields, a few hundred feet. It was undisputed by all parties that the property could not be developed based on the characteristics of where it was, the slope, the angle, the elevation. The problem you had was, the question was when it came to the DIV appraisal was, would anybody pay a penny more for the collateral estate if there was a loss of the claim property? And the appraiser was retained by a steward title guarantee company to provide a DIV appraisal. The only appraiser in the case that did a DIV appraisal— A DIV appraisal that everybody concedes is inconsistent with the policy. Correct. Okay. And the reason it's inconsistent with the policy— I understand why it's inconsistent with the policy. Right. But you're claiming a righteous ground by saying they didn't even do a DIV policy consistent with the policy. A DIV appraisal consistent with the policy. Well, you'll notice that the basis for our appeal was not the simple fact that the plaintiff had failed to provide the evidence required to prove their case. Right. The point was, the steward title guarantee company, their retained outside counsel, made the determination to do a DIV appraisal just using the Bonanza Flats parcel as the parent tract to try to provide some value. And as I understand it, what you tried to do through your appraiser is to say that the claimed property would not have enhanced the value of the Bonanza property. No. It went the other way. So what happens is the appraiser comes to the steward title's outside counsel and he says, there's no DIV. You've got thousands and thousands of acres spread out all over these mountains that have golf courses, resorts, you know, properties ready to be developed. And the claimed property is at the top of the mountain that can't be developed, that has no use, that provides no benefit to these parcels whatsoever. And so, if you're asking me to do a DIV for the entire collateral estate, the answer is zero. I can tell you it's zero. And the steward title's claims counsel says, we've got to find some way to provide some value. What if you were to just use the Bonanza Flats parcel? And it makes sense because the Bonanza Flats parcel is the only parcel that's in the collateral estate that isn't anywhere near the claimed property. It's actually, it's overlooked by the claimed property. And the DIV appraiser says, if I were to do that, I mean, it doesn't really enhance the value of Bonanza Flats, but we could call it buffer property. He said, sometimes people, developers, will essentially buy the property next to their property that they're going to develop, even if they're going to use it, just to provide them with a buffer. He said, I can give it some kind of value if we do that. And steward title's counsel said, yes, do that. Let's find some way. I understand what happened here. And I don't know that I understand why Stewart's expert chose to do it that way in light of the policy language. So when we go to the policy language, as I'm understanding your argument here, you're suggesting that the district court might have set out correctly how it should be, how the diminution in value works. But then when it actually went to recite its conclusions, it made some kind of confusing statements. No. No? No. OK. I kind of want you to get to what your claim is here, because I'm not sure I understand it. Understood. And I will say this, to get you ready for this, I've got a 2,000-plus page appendix. You really only need three documents, Your Honor. You need the stipulation that the parties entered into, which is at page 62 of the appendix, where the parties agree that the trial will focus on the condition 7A3 analysis, the DIA. Right. That's where the parties agree what the trial's going to be about. Right. Then you need the findings of fact and conclusions of law, which is at page 672. And this is where the district court judge goes through this discussion, which says Stewart Tyler prepared the wrong appraisal. They did a DIV appraisal, but it was the wrong appraisal. What was required was to do an appraisal of the collateral estate. That's what was required. And then she says, but it doesn't matter. Because for all of the reasons that Mr. Hawks, that was our appraiser, said that there was no DIV to the entire collateral estate with the loss of the claim property, there's no DIV to Bonanza Flats if you lose the claim property. Right. So either way, the DIV is zero. I think you would, you know, I know you guys disagree. Did I talk over you? No, no. Go ahead. No, no. You go ahead. But I honestly think you misunderstood what Judge Teeter said on page 7 and 8 of her order. And that is, I think what she was saying is you have the parcel A, I agree with you, it's completely removed from the claim property. You have parcel C that's completely removed from the claim property. The value of the claim property is not going to enhance or diminish the value of parcel A or C. The only property, as your appraiser indicated, that could potentially be affected is the Bonanza Flat property that adjoins the claim property. And so what she said was, well, if you, the collateral estate, if you value that minus the collateral, you know, plus what was insured, plus the claim property, minus the actual property, A, parcel A plus parcel C plus the Bonanza Flats, then you either, you can do that very simply. It's not complicated. You look at whether or not the claim property enhanced the value of parcel A or C. Nobody suggested it does. Does it enhance the value of the Bonanza Flat property? And your appraiser says, no, it doesn't. And Judge Teeter says, no, it doesn't. And then the very next paragraph on page 7, of course, the claim property still has value based on its highest and best use. So then she says, so there's no effect on the claim, on the collateral estate unrelated to the claim property. So the question is really simple. The insured, the value of the insured property minus the actual property that was conveyed is the value of the claim property. And so she evaluated the claim property. I'm going to tell you, I'm going to give you two reasons why that is not correct. All right. The first is, if you actually look at the entire findings of fact and conclusions of law, the collateral estate is actually a defined term. It's in the opening paragraph on page 672. It says, a security for the Talisker loan, UPCM offers thousands of acres of real property located in several counties around Park City, Utah, open parentheses, the collateral estate. I understand. So she's defining it as the collateral estate. And she makes a mistake on the next page. I understand that. I don't believe she does. And the reason I bring this up is, the language that we're talking about on page 678, she goes beyond collateral estate. And I know I'm not supposed to read to you, but the language is so important. She says, this is on page 678. It's the third paragraph down. Mr. Hawks used Bonanza Flats as the parent tract in his DIV analysis. But as the court has found, the language of condition 783 indicates that the entire collateral estate should have been used as the parent tract. Nevertheless, this difference has little effect on the ultimate determination of the claimed property's value, and Wells Fargo was lost under the policy. For the same reason that the claimed property has no effect on the value of Bonanza Flats, the claimed property has no effect on the total value of the collateral estate, two-thirds of which is located nowhere near the claimed property. As a result, it does not matter that Mr. Hawks calculated his DIV in relation to Bonanza Flats when he should have used the entire collateral estate. Either way, there is no diminution. And he says that what you forgot to say is there's no diminution in value as to the portions of the collateral estate separate from the claimed property. Right. I am saying this is what the judge has said. I agree with you. And Wells Fargo is saying, but she meant something different. And I said I was going to tell you two reasons why it doesn't matter. Sorry. The focus and the way you phrase it, I totally understand. There's this view that people have where they say, well, all property has some value. We're not disputing that. That's not the issue here. That's not the question in this case. The question in this case, let's just accept that. All property has value. It doesn't change us here, anything here. The question here is, what is the indemnification obligation of a steward title guarantee company under the policy? Because Condition 7 deals with the determination and the extent of their liability under the policy. It doesn't deal in terms of, well, what value could the property have? And what it specifically says is the policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy. And only to the extent here in described. And then it provides that liability. Again, forget about the concept of loss. We're not worried about that. What's the liability of a steward title guarantee company under this policy to Wells Fargo? It's the lesser of these three categories of things. And one of them is the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien, or encumbrance insured against by this policy. And we have a finding of fact by this judge, which has not been appealed by either party, that says there is no diminution in value to the entire collateral estate as a result of the loss of the claimed property. Because geographically, it has only proximity to the Manson Plattes parcel. It can't be developed. It's at the top of a mountain. You can't do anything with it. She also made it clear that in this circumstance, with the facts that we have here, that the value of the collateral estate without the claimed property here is very simply the value of the claimed property. She made that clear. And how is that confusing? Well, that's not what the policy was. That's not what the trial was about. The trial was about determining whether the steward title guarantee company had breached the policy. The policy defines what the liability obligation, the identification obligation of the steward title guarantee company is. And that's in condition set A3. The district court went completely off policy. And it happens in one sentence. I mean, it's very rare that you can sum it up in one sentence. And that's on page 679. Where she says the court concludes that there is no diminution in value to the collateral estate based on the loss of the claimed property. Now, where I come from, as a person who only practices title insurance and works with the 1992 ALTA loan policy, there should have been a semicolon. It's just that, therefore, judgment is entered in favor of the steward title guarantee company because that's what the policy provides. But then she says, and then Wells Fargo's loss out of the policy is the retrospective market value of the claimed property, the ski terrain, and open space, including improvements. The policy doesn't provide that. Condition 783 is not. It's mandatory. It says, shall be. It's not permissive. And it has three options, not four. And there's nothing in there that says you would provide the second highest. And it says you're going to provide the lesser of the amounts. And what happened in this case was the district court simply got to a point, and I go back to that idea that there is this view by people that all property must have value. That's not what a steward title guarantee company is. It's not what any title insurer insures with a 1992 ALTA loan policy. It's the value of the collateral estate. And the reality is when you have thousands and thousands and thousands of acres that serve as the security for a loan, it's possible that a portion of the claimed property can be lost, and it doesn't affect the total value of the collateral estate. I see I'm over time. For that reason, again, simplest case you're going to have on the docket today, a steward title guarantee company would request that the district court's decision be reversed. Thank you, counsel. Mr. Pratt. Your Honors, good morning. May it please the court, my name is George Pratt, representing Wells Fargo Bank on this appeal. I'd like to address three issues. The first is the one that consumed all of the preceding argument, the application of Condition 783. I'd also like to briefly address the argument that's briefed that there was no intent, actually, for this property to be part of the collateral. And third, I'd like to address Wells Fargo's cross-appeal on prejudgment interest. I think the court has in mind what our argument is on Condition 783. There were multiple parcels insured. There was a default. Wells Fargo went to foreclose. It foreclosed against all of its collateral, except for the claimed property, because it couldn't, because we didn't have a valid trustee. So what's our loss? The loss is the property we couldn't foreclose. That's so simple. And that's all there is to it. And didn't Judge Teeter, in your opposing counsel, didn't quote this provision, but this is the one that is more troubling to me. It's the page after the one he was quoting. On page 8, the court concludes that there is no diminution in value to the collateral estate based on the loss of the claimed property, and that Wells Fargo loss under the policy is the retrospective market value of the claimed property as ski terrain and open space, including improvements. And then you combine that with what opposing counsel did say, either way there is no diminution in value. At a minimum, it seems that we have two statements. Well, both of them are relatively explicit. It says that she has concluded that under 7A3, there is no diminution in value to the collateral estate. And you say, well, that's not what she meant. That is what she said. I wonder if we credit your argument, if we should retain jurisdiction and remand to Judge Teeter and say, you know, tell us what you meant in that sentence on page 7 and on page 8. Tell us whether you really meant that there is no diminution in value to the collateral estate. And as your opposing counsel says that she did say it, and if she meant it, then we did need to reverse. Why shouldn't we just ask her for clarification and retain jurisdiction? Judge, it's a good question. I don't think there's a need to do that. If you look at that statement that Your Honor just read in the context of what was being discussed, I think it's clear that when Judge Campbell used the term collateral estate, when she said there's no diminution in value to the collateral estate, she misspoke because she was only referring to all of the collateral estate except for the claim property. And that's why in the very same sentence she said that the actual measure of the loss is the value of the claim property itself. And the reason the court even got into this analysis is because Stuart Title had an attorney who instructed the appraiser that the way to do this diminution in value analysis was to determine the impact of the loss of the claim property on all the rest of the collateral. And there was a question, so which other collateral should we be looking at? Should we be looking just at the neighboring Bonanza Flats property, which would most likely be the one to be impacted, or should we determine the loss of the claim property on the entire collateral estate? Not thinking that, but what about the claim property itself? And so the court determines in this analysis that ends with this sentence that in order to do that analysis, you really should look at the entire collateral estate because that's what the language of Condition 783 requires, not just Bonanza Flats. And so the court concludes there's no diminution in value to the collateral estate. Again, she's misspeaking. It's clear what she actually means based on the loss of the claim property. In other words, whether we're looking at the impact of the loss of the claim property just on neighboring Bonanza Flats or on all the property. Whatever the remaining property. Yes. Other than the claim property. Exactly. And that's why it's so clear in this opinion. If you look at page 4, the court says that the way to determine what the loss is under these facts is to look at the value of the claim property. But you're saying, basically, OK, well, there's, I mean, you're very candid. I mean, you said that's not what she meant in the first clause of that. And maybe we say, OK, and your opposing counsel says this in his brief. Well, OK, not once, but twice because of the preceding page. She says the exact same thing. Either way, we're talking about the collateral estate being the Bonanza Flats or the entirety of the collateral estate minus the claim property. Either way, there is no diminution in value. So, I mean, I just worry. And, by the way, I'm sorry I kept calling her Judge Teeter. But it seems to me, boy, it's dangerous to just assume that she made two major substantive typographical errors. And we're just going to assume that those are typos. And so we're going to affirm because she probably didn't mean what she said twice. It scares me. I suppose that is an option if it appears to the court to be unclear what was actually intended. Well, was it an issue before the court whether the value of the remaining part of the collateral estate was affected by the owner not having the claim property? Was that an issue? It was definitely Stewart Title's issue because that was their view as to how to apply Condition 783. Ignore the claim property. That's their view. Ignore the claim property. What we want to know is how did the loss of the claim property impact the value of everything else? And that was an issue before the district court. Yes, absolutely. And in discussing that issue, the district court kept referring to, at least twice, referred to the collateral estate when she was, she used the term collateral estate when she was referring to the property that was supposed to be collateral less the disputed property. Right. I think if you read the entire findings and conclusions, it's absolutely clear. I mean, it's absolutely clear from the fact that she awarded damages of $3 million not because she found that there was no diminution in value to the estate. She obviously had in mind that the measure of damages is the loss of the value of the claim property. I believe the court, just simply as Your Honor just mentioned, did not have in mind that the collateral estate obviously also includes the claim property itself. Wow. If she really meant what she literally said, she could not possibly have awarded anything. Exactly. Much more succinctly stated. Thank you. I will leave the argument regarding whether there was an actual intent to the briefing other than just to point out it's a clearly erroneous standard. As we argue in our briefs, we don't believe that issue should have come into the case at all. It was never pleaded. We filed a motion in limine. The court denied that, allowed in evidence, having going to the issue whether or not the trustor actually intended to convey the claim property as collateral. But it was raised before trial. It may not have been raised in a separate pleading, but it was raised before trial in the response to the motion in limine. Correct. So they did present it to the district court before the trial. Correct. And our argument was that there was no ambiguity with regard to the legal description in the trust deed, which was then incorporated into the policy, and therefore no reason to, without having made a claim that that was a mistake, a claim of reformation, that the evidence should underlie this rule. But then there was a separate intent argument that I can't see how it was raised before trial, but it was raised at the close of trial in the proposed findings of fact, and that was that Wells Fargo didn't intend to collateralize the improvements on the claim property. Am I reading the record correctly? They did argue that post-trial, did they not? Yes. Had that been mentioned at any time before the close of evidence? I can't recall the evidence well enough. I do recall that at trial, the focus was on the claim property, which would include the improvements to the extent that they were real property. That's why they were valued and the court found damages. But did the title company, at any point during trial, make a distinction between the improvements to the claim property and the land itself? When it was saying that the claim property wasn't intended as collateral, that's one thing. It's another thing to say, oh, the land was intended to be included as collateral, but not the improvements. Was there any testimony on that issue? Yes, I believe there was. There was. It's actually in the briefing, our evidence that was presented at the trial. The briefing in this court? Yes. Yeah. I'm just wondering whether that issue was preserved. By? By Stuart Title. I don't know whether it was preserved or not. But there was testimony just to the effect that Wells Fargo didn't think it was getting the improvements as collateral. Yes, there was. And the court found that testimony, all that evidence, unpersuasive, and roots its decision on page four of the findings and conclusions in the fact that the trustees very clearly do ensure this property. And for the judge, even though she allowed the evidence in over the parole evidence rule and objection, the judge found that that was the overriding evidence, the most compelling evidence, and everything else was rejected. So what? Let me, it's time short. The sentence by the court was, this leads the court to find that UPCM intended to offer the claim property as collateral for the Talisker loan. It doesn't distinguish there between the land and the improvements. But that was clearly presented to the court. You think that that sentence disposed also of the claim that the improvements were not intended to be collateral? Yes, because the trustees don't say anything about improvements. The improvements go along with the real property to the extent that they are real property, of course. And so if you are insuring the claim property, you are insuring the improvements. And I think I hate to say that this is not clear in the judge's findings. I think it's very clear that the issue was presented and it was specifically presented at trial with regard to improvements. And the judge did not find it persuasive. I've got 44 seconds to address my cross appeal. I would like to emphasize, I think that this case is indistinguishable from Smith against Fairfax Realty, which Judge Campbell did not even mention in her order denying prejudgment interest. In both cases, you have competing appraisals of real property. You have the trial court picking an appraisal in the Smith case. And that is found sufficient as a matter of law to support an award of prejudgment interest. And in our case, the only difference is that Judge Campbell, she accepted Stuart Title's valuation of the land. And she accepted Wells Fargo's valuation of the improvements. These prejudgment interest cases really get into the question of how much discretion can be exercised in awarding damages before it just becomes so amorphous that it's really not mathematical certainty. And I think the case law is very clear. The Fairfax case, also the Encont case, that where the trial court is just deciding which expert's analysis it finds most convincing, which is exactly what happened in our case. One on land, one on improvements. Okay. Thanks. Thank you. Thank you for the question. No, that's all right. Thank you, counsel. I'm going to give opposing counsel 40 seconds to respond on the interest. The interest argument is easy to respond to. The Smith case, which Mr. Pratt talks about and says was not discussed in the court's order, was cited 18 times in Mr. Pratt's motion requesting prejudgment interest. It's a 2003 case. If you actually look at the order denying it, Judge Campbell addresses authority well after 2003. And she just comes and she point blank says it. She says, I heard a lot of testimony from experts. Quite frankly, I rejected almost all of it, and I used my own discretion to come up with this damage award. Under Utah law, that is the standard. If it's the judge's discretion that is important, if it's the finder of facts discretion, that eliminates the award of prejudgment interest. In terms of a review standard, the legal analysis that Judge Campbell had set forth is clearly on point. It's just her discretion. Thank you. Thank you, counsel. Case is submitted. Counsel is excused.